13th Jan. 1810.
Brevard, J.,
delivered the opinion of the ■court, Grimke, J., absent. The only question of law to be consi. .dered and decided, in this case, is, whether, under the circumstances disclosed, the plaintiff is entitled to freight, and if any, to what freight ? It is a fact in the case, pndisputed, that the vessel was not seaworthy. On this ground, the judge, who presided on the trial, charged the jury to disallow the claim for freight altogether. The particulars which constitute the defendant’s demand, set up by way of discount, have not been investigated, at least, by my brother Smith, and myself, on this motion, and probably were not by the court and jury, on the trial. My brother Smith, and myself, therefore, think, that we cannot, with propriety, presume, that the jury made any allowance in their verdict for freight, especially as the presiding judge expressly charged them to disallow that claim. As we are of opinion, that the charge was wrong, on the broad ground on which it was predicated, viz., the unseaworthiness of She ship; and as we cannot pretend te say, whether the jury did *366 not implicitly conform to the charge, we are of opinion there should be a new trial, on this ground, to give the plaintiff an opportunity of recovering a compensation for freight, if he should be entitled to it on other grounds. But as a majority of the court seem to be clearly of opinion, from an examination of the items of discount, anti a comparison of them with the demand for freight, that the jury have, in fact, allowed for freight as much as the plaintiff could,on any principle of law, claim, a new trial is refused. It is necessary, however, to state the grounds, on which we all agree, that if no allowance for freight had been allowed, the plaintiff would have been entitled to a new trial. In support of the judge’s charge to the jury, it has been urged, that the vessel was not seaworthy at the commencement of the voyage, which was the fault of the plaintiff, who was bound by his contract to furnish a vessel tight arid staunch, and, in all respects, able to perform the voyage ; and that for a violation of this implied undertaking, where it can be proved, as in this case, that the vessel was not seaworthy, it will vacate the contract, and the freighter shall not be responsible for the payment of freight, even although the goods had been carried in safety to the port of delivery ; but especially, if the goods have not been carried to the place of delivery ; and that in such case the ship owner cannot recover freight pro rata itineris. It has been contended, that contracts of insurance cannot be distinguished from contracts of affreightment, iu the application of the doctrine of seaworthiness; and if this position be correct, the motion cannot be supported ; because, in this case, it has appeared the vessel was not seaworthy. But tlje position cannot be maintained. In the contract of insurance, the ship is the substratum, the basis of the contract. The insurer contracts to indemnify the insured against the damage, or loss, which may befall the ship, or goods, from perils of the sea, in consideration of a certain premium. li is always understood, in such contracts, that the ship is capable of performing the' voyage. If the ship is incapable, the contract is void. It never could attach ; for the ability of the ship is the foundation of the contract. The premium is the consideration, or meritorious cause of,the contract, binding on the insurer, to insure against perils of the sea, during a voyage undertaken by a sufficient ship. The contract cannot apply to au insufficient ship. Insurance in the case of vessels not seaworthy, is regarded as fraudulent; and the effect of fraud is to vitiate every contract into which it enters. In the case of a charter party, where the freight does not depend on the same circumstances which will entitle the insurer *367 to the premium, and where he will be liable for the sum underwritten, upon the happening of any of the perils insured against, the contract does not seem to be founded upon the. presumption of the general sufficiency of the ship to perform the voyage, although undoubtedly it is the duty of the master to provide such a ship. It does not seem to he a tacit, or implied condition of the contract, as it is in every policy of insurance. It is, indeed, Visually stipulated expressly, on the part of the owner, or master, that the ship shall be tight and staunch. This is part of the contract, and the master or owner is hound hy the stipulation; but it is not a condi• tion of the contract, as in the case of a contract of indemnity. The freight is agreed on for the hire of the ship, on the carriage of the goods to the place of delivery. The goods are obliged to the ship for her hii;e. So is the ship to the owner of the goods in case of damage, or loss, through any defect of the vessel, or sailors. Beawes’ Lex Mercatoria, 108. Each party has a remedy on the charter party. The contract is npt vacated ^by reason of the general insufficiency of the ship, hut stands in fo'rce, and ihe remedy of the freighter is upon it. “If a merchant,” says Beawes, “ship part of the goods on board, and is prevented from putting the remainder on board in the tipie limited by the contract, the master shall have his freight by way of damage, for the time the goods were on board. And if the vessel be not ready in time, the merchant may ship the goods on board another. And if the goods are on board, and the ship breaks ground, and afterwards the merchant unloads them, and will not prosecute the adventure, by the marine law, freight is due.” Beawes’ Lex- Mercatoria, 109, 110. I recite these passages in Beawes, to explain and illustrate the doctrine quoted from Abbot,in supportof the position contended for in the argument, that no freight can be earned by a vessel not seaworthy. Mr. Abbot, in the'3d chapter of his work on shipping, lays it down as the first duty of .the master, to provide a vessel tight and staunch ; and that if the merchant suffers loss, or damage, by reason of any insufficiency of the vessel, he shall have a recompense.
It seems clear, from all that can be collected from the works of these writers, and from the cases cited by counsel, in arguing this case, that the owner of the goods cannot be entitled to vacate the charter party? or contract of affreightment, on the ground of the unseaworthiness of the vessel; but that his claim for compensation, or damages, in case of loss, or waste, or damage, to the goods ; or for want of punctuality, care, or despatch, in the execution of the contract, on the part of the owner, or master, of the ship, must he *368 founded on the contract, or on an implied contract in law, to com» pensate for the service performed. There is no authority to sup. port l'le position, (hat the master shall not have his freight, although 0(irr’es &<>** safely> iU'd delivers them at the port of delivery, if the vessel be unworthy of sea, in which he performs his con. tract. The French ordinance is not an authority here. By that ordinance, if the merchant can prove that the vessel, at the time of sailing was incapable of performing the voyage, the master shall lose his freight, and pay the merchant damages, and interest. The English-daw, which is, that by which we must be governed, because, generally speaking, it is our iaw, and it is so in the present case, is different. The merchant cannot avoid the contract; yet he may avoid the operation of it. For example, if he finds, before the departure of the vessel, that she is insufficient, he may refuse to send his goods. He is not bound to risk his goods in such a ship. And he will be justifiable in unloading them, even after the vessel breaks ground, and commences her voyage. “ If the master weighs anchor,” says Beawes, “ after the time covenanted, he shall answer for damages that may happen at sea ; but if he arrives safe in port the freight shall be due.” The parties shall be answerable on their respective covenants. The whole contract is not to be considered void, if auy of the covenants are violated.
in the present case, however, the ship did not perform the voyage. The putting into Charleston, and detention there, was not occa. sinned by perils of the sea. It did not happen from necessity, without the fault of the plaintiff. It happened from his fault; from a breach of duty on his part, in not providing a vessel worthy of sea. if the vessel, without any fault of the plaintiff, had sought refuge from storms, or other inevitable cause, it) an intermediate port, he would not have forfeited his light to freight, provided he had used reasonable diligence to procure another vessel, without any unnecessary delay, to complete the transportation of the goods ^ or if the freighter had insisted on taking them at such intermediate port. If both parties agree, the one to deliver, and the other to accept the goods, at an intermediate place, freight ought to be paid for the proportion of the voyage performed ; or where the master? refuses to prosecute the voyage, after a disaster not occasioned by his fault, which compels him to go into a port short of the place of delivery.
The contract of affreightment is an entire contract, and each party is entitled to a remedy upon it. A part performance will uofc excuse, but it will be evidence in mitigation of damages, A re *369 medy lies in the power of the freighter, upon ike contract, if any loss accrues, or injury arises from the fault of the master, or owner, in carrying, or attempting to carry the goods in„an insufficient ship ; for any delay in the transportation of the goods, injurious to the interests of the freighter, and contrary to the true meaning of the contract. In the present case, the jury should have been instructed to find against the plaintiff’s claim of freight, if, from the evidence submitted to them, they should believe the defendant was not bene-fitted by the carriage of the goods to Charleston. If the part per-formalice was beneficial to him; if Charleston is on the direct route of the voyage to Boston ; if no delay, of any consequence to the defendant, intervened; if the plaintiff was willing to complete the transit of the goods to the port of delivery in a reasonable time, and would have done so, but was prevented by the defendant, or his agent, it seems to me, the plaintiff was entitled to full freight, If the delay wasrinjurious to the defendant, he ought to be recompensed. If the plaintiff took no proper steps, in due time to transport the goods to Boston, after putting into Charleston, from the insufficiency of the ship, the defendant was authorized to take his goods, if he could take them without force ; and no freight, I think, was justly demandable. But this might depend on the benefit derived from the carriage, so far, and the slightness of the damage occasioned by the delay, which are facts that should have been left to the jury.
Apportionment of freight usually happens, where the ship, by reason of any disaster, goes into a port short of the place of destination, and is unable to prosecute and complete the voyage. In such case the master may, if he will and can do so, hire another ship to convey the goods, and so entitle himself to his whole freight. But if he is unable, or declines to do this, and the goods are received by the merchant, by the general rule of the maritime law, freight shall be paid according to the proportion of the voyage performed, pro rata itineris peracti. Abb. 245, 254. If the ship become unable without the master’s fault. Malyne 98. Abbot 247, 8.
The inability of the ship, at the commencement of the voyage, gives rise to another consideration. My opinion is, that freight cannot be apportioned by the maritime rule abovementioned, where the ship is not seaworthy at the commencement of the voyage, because the master is in such case in fault; but the master may, notwithstanding, be entitled to some compensation, according to cir *370 cumstances, as in other contracts where there has been a partial £ performance.
Note. No freight is due till the cargo is delivered according to contract. 2 Johns. 337 1.Johns. 25. Acceptance at an intermediate port, a ground of implied assumpsit. 1 Johns, 325. Abbot, 249. 2 Burr. 882. Where a vessel is forced out of her way, and the cargo is delivered at an intermediate port, pro rata freight is recoverable from the owner of the goods, who received them, by action of assumpsit, not by covenants on the charter party, which must be abandoned. J Johns. 249.' 2 Johns. 337, 325.
Motion refused.